819 So.2d 993 (2002)
Ronald NESBITT, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-203.
District Court of Appeal of Florida, Fifth District.
June 28, 2002.
James B. Gibson, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
COBB, J.
The defendant appeals from his convictions for aggravated assault (by use of a deadly weapon) and for battery. The *994 defendant was charged by information with attempted second degree murder with a weapon and aggravated battery with a deadly weapon arising out of an incident involving his then wife. During this incident which featured an angry confrontation between the two, the defendant targeted his wife with a stun gun and repeatedly stunned her with it and at one point placed a pillow over her face. The wife was able to leave the scene and suffered some welts and blisters on her body.
The sole point warranting discussion concerns the conviction for aggravated assault. The trial court instructed the jury on aggravated assault as a lesser offense of attempted second degree murder with a weapon. Aggravated assault is a category 2 lesser included offense of attempted second degree murder. See Florida Standard Jury Instructions in Criminal Cases, p. 372. As such, it may or may not be included in the offense charged depending on the wording of the accusatory pleading and the evidence. See State v. Wimberly, 498 So.2d 929 (Fla.1986). An instruction on a permissive lesser included offense is proper only where the elements of the lesser offense are set forth in the charging document and are supported by the evidence. See State v. Espinosa, 686 So.2d 1345 (Fla.1996); State v. Von Deck, 607 So.2d 1388 (Fla.1992).
The aggravated assault conviction herein at issue was based on a jury charge defining that offense as "an assault with a deadly weapon without intent to kill." See § 784.021, Fla. Stat. But the information did not charge in Count I that a deadly weapon was employed. If an objection was interposed that the instruction was unwarranted as exceeding the allegations of the charging document, reversible error would exist. See Von Deck.
In this case, however, defense counsel expressly agreed that one of the possible lesser included offenses was aggravated assault and never raised the issue of the deficiency in the charging document. Under these circumstances, the issue was not preserved for appellate review. See Ray v. State, 403 So.2d 956 (Fla.1981)(it is not fundamental error to convict under erroneous lesser included charge where defendant, despite opportunity, failed to object and offense is less serious than main offense); Herise v. State, 763 So.2d 393 (Fla. 3d DCA 2000); Tolbert v. State, 679 So.2d 816 (Fla. 4th DCA 1996)(en banc). We recognize that a line of cases represented by Levesque v. State, 778 So.2d 1049 (Fla. 4th DCA 2001); and Mateo v. State, 757 So.2d 1229 (Fla. 2d DCA 2000) hold that an error of this type is fundamental in nature.[1] We certify conflict with those decisions.
AFFIRMED.
GRIFFIN, J., concurs.
HARRIS, J., concurs specially with opinion.
HARRIS, J., concurring specially.
The majority upholds appellant's conviction for aggravated assault even though it finds that defendant was not charged with the crime (there was no specific allegation *995 that a "deadly" weapon was used). It does so on the basis of Ray v. State, 403 So.2d 956 (Fla.1981). I submit that law which permits a citizen to be convicted of an uncharged crime must be applied carefully.
As Ray tells us, the United States Supreme Court has held that: "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." In order to avoid this due process argument, Ray holds that an appellant may waive this due process right, or may be estopped to assert it, if he, through counsel, fails to object to an instruction on an uncharged offense provided the improper instruction is to a lesser crime than the one charged or if appellant, again through counsel, requests such a charge or relies on such charge. Further, we learn from State v. Espinosa, 686 So.2d 1345, 1348 (Fla.1996), that the conviction will stand even though the elements of the uncharged offense are not proved if the evidence is sufficient to establish the charged offense.
The Espinosa court explained the rationale for the Ray principle:
Nevertheless, for policy reasons similar to those underlying the rationale in Ray, we do not believe that a defendant who requests an instruction on a lesser-included offense should be allowed to complain on a sufficiency of evidence claim on the lesser-included offense when sufficient evidence exists to convict the defendant for the greater offense.... [To hold otherwise] would allow a defendant to essentially "sandbag" the State while committing fraud on both the jury and the judge.
In Ray, even though it appears that defense counsel did not object to the improper instruction[1], no waiver was found. The court stated: "If Ray's counsel had requested the improper instruction, or had affirmatively relied on that charge as evidenced by argument to the jury or other affirmative action, we could uphold a finding of waiver absent an objection because constitutional error might not be fundamental error and because even constitutional rights can be waived if not timely presented."[2]
Thus, the Ray principle as explained by Espinosa seems to be intended to prevent the defendant from leading the trial court into error for his or her own advantage. In other words, convicting one for an uncharged crime is fundamental error, but fundamental error which can be waived by the improper conduct of the defendant (through his attorney). But what happens if defense counsel fails to object to an instruction proposed by the court, not because of trial strategy but simply because defense counsel is no more aware of the law than is the judge or the prosecutor?[3] This is what occurred in this case.

*996 THE COURT: Do we agree with the possible verdicts of the lesser includeds?
The defendant is guilty of an attempted second degree murder with a weapon; and the lesser included, attempted second degree murder; agg. assault; battery, assault.
Is that correct?
THE STATE: Correct.
DEFENSE COUNSEL: That's right.
Thus while defense counsel did not object to the instruction, it is clear that she did not request it.[4] Nor did she rely on it in her closing argument. She explained the charges that the court intended to give to the jury but she rejected aggravated assault as a proper verdict on the same basis that she rejected attempted second degree murder with a weapon:
DEFENSE COUNSEL: When you look at the jury instructions that the judge is going to instruct you on, you can find then, one, they charged attempted second degree murder and charged with a weapon. With a weapon, that defines deadly weapon or serious bodily harm. And then you can look at attempted second degree murder. Also, again, has serious bodily injury. And then there's aggravated assault. Again, that goes to a deadly weapon, if it's used or threatened to be used in a way that it produces death or great bodily harm. A comment after that is great bodily harm which, again, the state has failed to prove beyond a reasonable doubt.
Thus, while defense counsel recognized the existence of the instruction on aggravated assault, and it would have been foolish for her to have ignored it, she did not seek to use the erroneous instruction to her advantage. Since the defense did not attempt to mislead the court and since the defense did not attempt to take advantage of an erroneous instruction, I would, as did the court in Ray, find that no waiver occurred and that appellant may properly raise this fundamental error on appeal.
I concur in the affirmance, however, not because of Ray but because I believe the instruction was proper. The attempted second degree murder count alleges a stun gun and a pillow as the weapons. The allegation does not allege that such weapons are "deadly." Indeed, a stun gun is statutorily defined as being "nonlethal." And a threat to assault one with a pillow would not normally instill fear in the heart of the intended victim. But could not these two nonlethal weapons used together create a high risk of death or serious bodily injury? If a victim is incapacitated and a pillow is placed over her nose and mouth for a sufficient period of time, a real danger exists that such victim is at serious risk of death or great bodily injury. This was the proof offered by the victim and is sufficient evidence to go to the jury on the charge of aggravated assault.
Did the State plead that a deadly weapon was used in this case? Certainly the adjective was not used. But what is the principal element of second degree murder? It is the intentional commission of an act that a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another. In this case, the State alleged that this "act" was the use of the stun gun and the pillow on this victim in such a way that death or great bodily harm would occur. What is *997 the definition of a deadly weapon? It is a weapon which is used or threatened to be used in a way likely to produce death or great bodily harm. In alleging that one has used a weapon or combination of weapons in an attempt to commit second degree murder, would not the inclusion of the adjective "deadly" before "weapon" be redundant? If the named weapon(s) is alleged to have been used in a way likely to produce death or great bodily harm, it appears to me that the additional use of the adjective "deadly" would be surplusage.
NOTES
[1] Cases such as K.H. v. State, 763 So.2d 1187 (Fla. 4th DCA 2000), Velasquez v. State, 654 So.2d 1227 (Fla. 2d DCA 1995), Jaramillo v. State, 659 So.2d 1238 (Fla. 2d DCA 1995), and Mauldin v. State, 696 So.2d 801 (Fla. 2d DCA 1997), which hold that conviction for a lesser offense not within the ambit of the charging document is fundamental error, are distinguishable. Those cases, relied upon by the courts in Levesque and Mateo, involved bench trials where the court found the defendants guilty of lesser offenses not charged by the charging documents. Those cases did not present the opportunity to object to the trier of fact's consideration of inappropriate lesser offenses in lieu of the main charge, an opportunity Ray finds to be significant. See K.H., 763 So.2d at 1188.
[1] Ray explains: "An incomplete record was presented to the district court. Specifically, the charge conference had not been recorded. Trying to fill the gap, the court ordered a reconstruction of the conference. In response, defense counsel neither admitted nor denied requesting the lewd and lascivious charge and stated that, upon the court's announcement that the charge would be given, neither counsel objected to or commented on the charge at any time." 403 So.2d at 958.
[2] In Ray, there was the additional fact that the improperly charged offense was of the same degree as the charged offense. But is a defendant innocent of an improperly charged offense to be condemned by its conviction because his or her lawyer is unaware of the law? It is apparent from this record that the defense counsel herein did not intend to mislead or sandbag the court and, more importantly, did not intend to take advantage of the improper charge.
[3] Even if counsel's failure to object based on ignorance of the law fails to "preserve the issue," still this ineffective assistance of counsel is apparent on the face of the record and should be subject to review.
[4] Defense counsel did not lead the court into error; she merely failed to stop the progress. This was no more trial strategy on her part than it was trial strategy on the part of the prosecutor who also agreed to the instruction.